IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 15-3242

DALE SHAFFER,

Plaintiff, Appellant,

v.

CITY OF PITTSBURGH, et al.,

Defendants, Appellees.

APPELLANT'S BRIEF

On Appeal from a Memorandum Opinion and Order of Court
of the United States District Court for the
Western District of Pennsylvania, Civil Action No. 2-14-cv-01674
dated August 14, 2015, granting dismissal.

COUNSEL FOR APPELLANT

Joel S. Sansone, Esquire
LAW OFFICES OF JOEL SANSONE
Three Gateway Center, Suite 1700
401 Liberty Avenue
Pittsburgh, Pennsylvania 15222
412.281.9194

## TABLE OF CONTENTS

TABLE OF CASES, STATUTES AND AUTHORITIES . . . . . . . . . . ii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW . . . . . . 2

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE STANDARD OR SCOPE OF REVIEW . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COUNSEL

JOINT APPENDIX, VOLUME I

    Notice of Appeal                        RR 1
    Report and Recommendation          RR 2
    Memorandum Opinion and Order of the District Court    RR 21

CERTIFICATE OF SERVICE

## TABLE OF CASES, STATUTES AND AUTHORITIES

CASES                                                                    PAGE

*Gelman v. State Farm Mutual Insurance Co.*
583 F.3d 187, 190 (3d Cir. 2009).                                          3

*Santiago v. GMAC Mortgage Corp.*
417 F.3d 384, 386 (3d Cir. 2005).                                          3

*Phillips v. County of Allegheny,*
515 F.3d 224, 233 (3d Cir. 2008).                                          3

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 129 S. Ct. 1937,
173 L. Ed. 2d 868 (2009).                                                  3

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555,
127 S. Ct. 1955, 167 L. Ed 2d 929 (2007).                                  4

*Fowler v. UPMC Shadyside* , 578 F.3d 203, 213 (3d Cir. 2009).       4, 21-22

*Thompson v. Real Estate Mortg. Network,*
2014 U.S. App. LEXIS 6150, 6-7 (3d Cir. 2014).                             4

*Kelly v. Jones*, 2015 U.S. Dist. LEXIS 50688 (E.D. Pa. 2015).            12

*Romero v. Fay*, 45 F.3d 1472, 1477 (10th Cir. 1995).                     12

*Sevigny v. Dicksey,* 846 F.2d 953, 957 (4th Cir. 1988).                  12

*BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986).                     12

*Estevez v. City of Philadelphia*, No. 06-3168, 2007 U.S. Dist.
LEXIS 14962, 2007 WL 707358 (E.D. Pa. Mar. 2, 2007).                      13

*Reedy v. Evanson,* 615 F.3d 197, 213 (3d Cir. 2010).                     13

*United States v. Yusuf*, 461 F.3d 374, 383, 2006 U.S. App.
 LEXIS 21599,*18, 48 V.I. 980, 992 (3d Cir. 2006).                    13

*Wilson v. Russo*, 212 F.3d 781 (3rd Cir. 2000).                    15-17

*U.S. Express Lines Ltd. V. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).    16

*Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. N.J. 1995).   16

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005).       16

*Merkle v. Upper Dublin School District*, 211 F.3d 782 (3rd Cir. 2000).    18

*Montgomery v. DeSimone*, 159 F.3d 120 (3rd Cir. 1998).              22

## STATUTES                                          PAGE

28 U.S.C. Section 1331                                1

42 U.S.C. Section 1983                                1

28 U.S.C. Section 1291                                1

Federal Rule of Appellate Procedure 4(a)(1)(A)       1

## JURISDICTIONAL STATEMENT

The United States District Court for the Western District of Pennsylvania has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as the underlying dispute arises from the Constitution, laws and/or treaties of the United States, namely, 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution. Appellant, Dale Shaffer ("Shaffer"), has alleged that Appellees, City of Pittsburgh ("Pittsburgh"), Nicholas J. Bobbs ("Bobbs"), Antonio Cummio ("Cummio"), and John and/or Jane Doe(s), violated 42 U.S.C. § 1983 and his Fourth Amendment rights to be free from malicious prosecution, false arrest and false imprisonment. Appellant also alleged claims of conspiracy under 42 U.S.C. § 1983, municipal liability and intentional infliction of emotional distress.

The United States Court of Appeals for the Third Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 as it is an appeal from a Final Order of the District Court, namely, the District Court's August 14, 2015, Order adopting the Magistrate Judge's Report and Recommendation to grant Appellees' Motion to Dismiss and thereby dismissing all of Appellant's claims for relief.

Appellant timely filed a Notice of Appeal on September 14, 2015, within the thirty (30) day appeal period set forth by Federal Rule of Appellate Procedure 4(a)(1)(A).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the United States District Court for the Western District of Pennsylvania erred in granting Appellees' Motion to Dismiss although Mr. Shaffer had alleged specific violations of his constitutional right to be free from malicious prosecution, false arrest and false imprisonment, and, moreover, Mr. Shaffer alleged numerous facts supporting his claim that Appellees ignored reasonably discoverable exculpatory evidence and omitted material facts essential to determining probable cause in the Affidavit of Probable Cause and, therefore, lacked probable cause to arrest, imprison and prosecute Mr. Shaffer. (See, Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss Amended Complaint). Specifically, the District Court erred when it (1) ignored controlling precedent from this Honorable Court to find that Appellees had probable cause to effectuate Mr. Shaffer's arrest, because, according to the District Court, the evidence which was omitted from the warrant was not "fundamental," or evidence from an official source, which would "completely exonerate" the suspect; and (2) viewed the alleged facts and evidence in a light most favorable to the moving party, the Appellees, as opposed to the non-moving party, Mr. Shaffer, which is contrary to the well-established standard for ruling on a Motion to Dismiss.

## STATEMENT OF RELATED CASES

Appellant is not aware of any cases related to the action that is the subject of this appeal.

## STATEMENT OF THE STANDARD OR SCOPE OF REVIEW

This Honorable Court exercises plenary review of the District Court's granting of motion to dismiss for failure to state a claim. *Gelman v. State Farm Mutual Insurance Co.*, 583 F.3d. 187, 190 (3d Cir. 2009) (citing *Santiago v. GMAC* Mortgage Corp., 417 F.3d 384, 386 (3d Cir. 2005)). To determine whether the District Court's dismissal of Mr. Shaffer's Amended Complaint under Fed.R.Civ.P. 12(b)(6) was proper, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

As recently outlined by this Court,

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); see also *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117-18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 2014 U.S. App. LEXIS 6150, 6-7 (3d Cir. 2014).

## STATEMENT OF THE CASE

**A. PNC Bank Robbery**

On March 13, 2013, the PNC Bank located on Carson Street in Pittsburgh,

Pennsylvania was robbed by an adult Caucasian male. At the time of the robbery,

Mr. Shaffer was helping a friend install insulation in a building located over two

miles away from the bank. The bank robber allegedly slid a note to a female teller

of the bank, demanding that she give him all of her money. The female teller was

the only person to have direct contact with the robber during the commission of the

crime. She described the actor as a 160 pound, 5'10" Caucasian with medium

build, shoulder-length, curly, black hair, wearing big dark sunglasses, being clean-

shaven and having braces on his teeth. At the time of the robbery, Mr. Shaffer was

not clean-shaven and did not have braces.

Two male employees of the bank alleged to have witnessed portions of the

robbery above. However, both of these employees only briefly viewed the bank

robber and neither was aware that a robbery was taking place until after it had

occurred. One of the male employees described the actor as a 5'8" to 6'2"

Caucasian male, 20 to 30 years old, with dark, curly, shoulder-length hair and dark

aviator sunglasses and having a slight build. This employee testified that he only

glanced up at the robber, and that robber's face was covered by big dark sunglasses

and his long hair. The second male employee described the actor as having long

5

dark and curly hair, and wearing dark sunglasses. He also said that the actor was wearing a red and brown hooded sweatshirt. Surveillance video showed that the actor was wearing a light gray sweatshirt. This employee testified that he was in the back of the bank and on the phone when the robbery occurred and only saw the actor out of the corner of his eye.

On March 14, 2013, City of Pittsburgh Police released a still photograph of the alleged bank robber captured from surveillance video at the bank to local media. That same day, Mr. Shaffer's estranged mother, who suffers from numerous mental disorders, contacted police to tell them that her son matched the description of the bank robber. After placing the phone call to police, Mr. Shaffer's mother contacted him to tell him that she called the police and identified him as a possible suspect in the robbery. Soon after talking to his mother, Mr. Shaffer contacted the police and said that he was willing to go to the appropriate police station to clear his name. At that time, Mr. Shaffer was informed that he did not need to go to the station.

Instead, Appellees Ciummo and Bobbs placed a photograph of Mr. Shaffer in four photo-arrays, which displayed the same eight photographs in different order. The female employee, who was the only witness to come in contact with the actor and able to get a clear look at his physical appearance, was unable to identify Mr. Shaffer as the perpetrator in the photo-array. The two male employees, who

both admitted to not getting clear looks of the actor, identified Mr. Shaffer in the photo array. However, Appellee Ciummo did not instruct the eyewitnesses that the actor may not be pictured in the array or that the eyewitnesses were to choose the actual actor. Mr. Shaffer was the only person in the photo-array who had the shoulder-length, dark, curly hair that all of the witnesses described the bank robber as having. Beyond having curly hair, Mr. Shaffer has no other physical characteristic included in the various witness descriptions of the actor.

On March 26, 2013, Appellee Bobbs, Ciummo and/or Doe(s) presented Mr. Shaffer's parole officer, Richard Donnelly ("Donnelly"), with still photographs from the security footage of the bank showing the actor, and they asked Mr. Donnelly if the person shown in the photographs was Mr. Shaffer. Mr. Donnelly then identified Mr. Shaffer as the person shown in the security footage. Appellees Bobbs, Ciummo and/or Doe(s) knew that the surveillance footage presented to Mr. Donnelly to identify Mr. Shaffer was of such a poor quality that no reliable identification could be made.

In the Affidavit of Probable Cause, Appellee Bobbs, as the affiant, stated that the reasons that he knew Mr. Shaffer committed the crime were the identifications by the two male and one female employee described above. In drafting the Affidavit of Probable Cause, Appellee Bobbs omitted the following facts:

a. the female employee initially described the actor as having braces on his teeth and Mr. Shaffer has never had braces on his teeth;

b. the female employee, the only person who had direct contact and a clear view of the robber's face, was unable to identify Mr. Shaffer in the photo-array;

c. the two male employees, the witnesses who identified Mr. Shaffer in the photo-array, only viewed the actor for seconds at most and did not have direct contact with the actor; and

d. the actor wore large sunglasses during the commission of the crime which covered a large part of his face, and his face was also partially covered by his long hair.

Mr. Shaffer was arrested on March 27, 2013, and charged with two counts of robbery related to the March 13, 2013, robbery of PNC Bank by Appellee Bobbs.

## B. Burglary of "Games N'At"

On March 17, 2013, Games N'At, a business located on Josephine Street in Pittsburgh, Pennsylvania, was burglarized. The actor stole assorted video game equipment from Games N'At. Surveillance video showed that the actor of the burglary appeared to be the same person who robbed PNC Bank on March 13, 2013. Mr. Shaffer's photograph was again placed in a photo-array and shown to an alleged eyewitness to the robbery. This alleged eyewitness later became a co-defendant in the case after stolen items from the burglary were found in his possession. Mr. Shaffer was one of only two people in the lineup shown with long hair. The other longhaired person appears to be of Latino descent.

Mr. Donnelly was again shown still photographs from the surveillance video of this burglary, and he identified Mr. Shaffer as the actor. On April 26, 2013, Plaintiff was arrested and charged with burglary of Games N'At. Mr. Shaffer was arrested while incarcerated at Allegheny County Jail for the March 13, 2013, bank robbery.

On June 18, 2013, Games N'At was burglarized a second time. The video surveillance from the latest incident showed the same person who burglarized the business on March 17, 2013, and robbed PNC Bank on March 13, 2013. Because Mr. Shaffer was detained at Allegheny County Jail at the time of the second burglary and could not have committed that crime, Mr. Shaffer's charges stemming from the March 17, 2013, burglary were *nolle prossed*.

## C. Trial

Although surveillance videos from the three incidents demonstrated a substantial likelihood that the same person committed all three crimes, Mr. Shaffer's charges from the bank robbery were still pursued after the second burglary of Games N'At. On February 4, 2014, a jury found Mr. Shaffer not guilty. He was detained at Allegheny County Jail from March 27, 2013, until February 4, 2014.

## D. District Court's Opinion

On July 7, 2015, Magistrate Judge Robert C. Mitchell issued a Report and Recommendation ("Report") in which he recommended that Defendants' Motion to Dismiss be granted and that Mr. Shaffer's entire Amended Complaint should be dismissed. On August 14, 2015, Judge Joy Flowers Conti filed an Order dismissing Mr. Shaffer's Amended Complaint with prejudice and adopting Judge Mitchell's Report, supplemented with Judge Conti's Memorandum Opinion, as the Opinion of the District Court in this matter. Both Opinions found that probable cause existed to arrest Mr. Shaffer.

## SUMMARY OF THE ARGUMENT

Mr. Shaffer pled in his Amended Complaint that the only evidence which implicated him in the robberies described above were unreliable identifications by unreliable eyewitnesses. Mr. Shaffer specifically set forth that the identifications were attained because of suggestive photo lineups and faulty instructions and that Appellee Bobbs made material omissions in the Affidavit of Probable Cause. In its Opinion, the District Court heightened the existing standard established by this Court to find that the Appellees possessed probable cause to arrest, imprison and prosecute Mr. Shaffer. Respectfully, the District Court did not view the facts pled in Mr. Shaffer's Amended Complaint in the light most favorable to him. Any reasonable reading of Mr. Shaffer's Amended Complaint, when accepting the facts pled as true in light of this Court's well-established precedent, shows that the Appellees lacked probable cause to arrest Mr. Shaffer. Therefore, Appellant respectfully urges this Honorable Court to find that the District Court erred in ordering to dismiss his claims.

## ARGUMENT

**A.    The District Court erred when it ignored controlling precedent from this Honorable Court to find that Appellees had probable cause to effectuate Mr. Shaffer's arrest.**

In his Report and Recommendation, Judge Mitchell found that the Appellee officers had probable cause to effectuate Mr. Shaffer's arrest because, according to the Court, the evidence which was omitted from the warrant was not "fundamental," or evidence from an official source, which would "completely exonerate" the suspect.  To support his analysis, Judge Mitchell cited dicta from *Kelly v. Jones*, 2015 U.S. Dist. LEXIS 50688 (E.D. Pa. 2015)[1], a case out of the

---

[1] The portion of *Kelly* upon which Judge Mitchell chose to focus was that Court's

> In evaluating issues of probable cause and the duty of an officer to consider potentially exculpatory evidence, the Tenth Circuit has recognized a distinction between "fundamental" evidence, which an officer must consider, and evidence that could be subject to a variety of interpretations. See *Romero v. Fay*, 45 F.3d 1472, 1477 (10th Cir. 1995). ... Other circuits have recognized that in evaluating an officer's assessment of probable cause, courts need to consider not just how the particular officer assessed the case, but how a police officer acting reasonably under the circumstances should have perceived it. *Sevigny v. Dicksey*, 846 F.2d 953, 957 (4th Cir. 1988). Or, as the Seventh Circuit has described the duty, "[a] police officer may not close his or [*14] her eyes to facts that would help clarify the circumstances of an arrest." *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (officer must be held to knowledge of reasonably discoverable information bearing upon probable cause to arrest for child neglect); see also *Estevez v. City of*

Eastern District of Pennsylvania. He wrote, "An officer is required to consider and include in an affidavit of probable cause for an arrest warrant any fundamental exculpatory evidence." (RR11).

In so doing, it is respectfully suggested that Judge Mitchell ignored, without reasonable basis, this Court's well-established precedent that where a warrant is issued on the basis of an affidavit that knowingly and deliberately, or with reckless disregard for the truth, contained false statements or omitted material facts essential to determining probable cause, the arrest is unlawful. *Reedy v. Evanson*, 615 F.3d 197, 213 (3d Cir. 2010). Furthermore,

> Assertions can be made with reckless disregard for the truth even if they involve minor details – recklessness is measured not by the relevance of the information but by the demonstration of willingness to affirmatively distort the truth. ***[O]missions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know in making a probable cause determination.***

*Id.* (Emphasis supplied). "In the end, the defendant must prove by a preponderance of the evidence that probable cause does not exist under the corrected affidavit, i.e., that the deficiency in the affidavit was material to the

---

> *Philadelphia*, No. 06-3168, 2007 U.S. Dist. LEXIS 14962, 2007 WL 707358 (E.D. Pa. Mar. 2, 2007) (Schiller, J.)

*Kelly,* 2015 U.S. Dist. LEXIS 50688, at 13-14.

original probable cause finding." *United States v. Yusuf*, 461 F.3d 374, 383, 2006 U.S. App. LEXIS 21599, *19, 48 V.I. 980, 992 (3d Cir. 2006).

By ignoring the applicable controlling precedent from this Court in this matter, the District Court failed to explain why the facts that Mr. Shaffer asserts should have been included in the Affidavit of Probable Cause were not facts that any reasonable person would know that a judge would want to know in making a probable cause determination. Rather, Judge Mitchell wrote, "The facts which Plaintiff alleges would have exonerated him or tend to disprove probable cause are not objective evidence from an official source tending to completely exonerate him but rather are subject to a variety of interpretations." (RR12).

The danger in adopting this heightened standard is that the Court will now allow material omissions unless the omission would exonerate a suspect. It shifts the standard from whether the information is what a judge would want to know when determining probable cause to whether the information omitted would exonerate the suspect. Certain exculpatory evidence that does not automatically exonerate a suspect can still disprove probable cause to arrest that suspect and is, therefore, material to a probable cause determination. However, under this heightened standard, material exculpatory evidence, which does not exonerate a suspect, is allowed to be omitted from an affidavit.

When a District Court is faced with the question of whether omissions were material to the finding of probable cause, it must reconstruct the affidavit with the omitted facts to see if the corrected affidavit still establishes probable cause. *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000).

A plain reading of Mr. Shaffer's Amended Complaint demonstrates that he has sufficiently alleged that Appellee Bobbs withheld information that a judge would want to know in making a probable cause determination and, therefore, the arrest of Mr. Shaffer was and is inadequate. Mr. Shaffer specifically set forth that Appellee Bobbs intentionally or with reckless disregard for the truth omitted that a.) a female employee, who was the only person who had direct contact with the perpetrator and a clear view of the robber's face, initially described the actor as having braces on his teeth and Mr. Shaffer has never had braces on his teeth; b.) the same female employee was unable to identify Mr. Shaffer in the photo-array; c.) two male employees, the witnesses who identified Mr. Shaffer in the photo-array, only viewed the actor for seconds, at most, and did not have direct contact with the actor; and d.) the actor wore large sunglasses during the commission of the crime which covered a large part of his face, and his face was also partially covered by his long hair, making identification extremely difficult. (See Amended Complaint, para. 29; RR 35).

This Court has stated, "*… courts have consistently considered the context of an identification, and have not stated that police can rely on any witness accusation*, however unreliable or unbelievable." *Wilson*, 212 F.3d at 791. (Emphasis supplied).  Although the facts omitted from the Affidavit of Probable Cause alone do not exonerate Mr. Shaffer from the crime, they disprove probable cause here because they show that the identifications of Mr. Shaffer were unreliable.  Because the only inculpatory evidence was the identifications, there was no probable cause to arrest Mr. Shaffer.

For these reasons, Appellant suggests that the District Court erred in granting Appellee's Motion to Dismiss and respectfully requests that this Honorable Court reverse the District Court's decision.

**B.    The District Court Erred when it Failed to View the Facts Pled in the Light Most Favorable to the Appellant in Dismissing Appellant's Claims of Malicious Prosecution, False Arrest, False Imprisonment, Conspiracy, Municipal Liability and Intentional Infliction of Emotional Distress.**

*i.    Malicious Prosecution, False Arrest and False Imprisonment*

In consideration of a motion to dismiss, the District Court should accept as true all well-pled factual allegations in the complaint and view them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  In order to prevail in claims of false arrest, false imprisonment and malicious prosecution, a plaintiff must demonstrate a lack of probable cause to

arrest. *Groman v. Township of Manalapan,* 47 F.3d 628, 636 (3d Cir. N.J. 1995);

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). The District

Court dismissed Mr. Shaffer's false arrest, false imprisonment and malicious

prosecution claims because it found that probable cause to arrest existed.

However, the if facts pled in Mr. Shaffer's Amended Complaint are read in the

light most favorable to him, the District Court clearly erred in making this

decision.

In *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. N.J. 2000), our Circuit held

that an eyewitness identification does not absolutely establish probable cause when

exculpatory evidence or evidence of the witness's unreliability is available. If the

facts alleged in Mr. Shaffer's Amended Complaint are taken as true in the light

most-favorable to him, the eyewitness identifications that the District Court

identified as establishing probable cause to arrest him are clearly unreliable.

Specifically, Mr. Shaffer pled that his mother suffers from multiple mental

disorders, that the two male employees, who identified him in the photo-array,

admittedly only viewed the actor for seconds and did not have direct contact with

the actor and that the parole officer was presented with only one person as the

possible suspect to a crime he had not witnessed and asked to identify that person

by surveillance footage presented, which was of such a poor quality that no reliable

identification could be made. (See Amended Complaint, paras. 13, 16, 18, 19, 22-

27; RR32-34). Mr. Shaffer further pled that the photo arrays used to identify him were tainted because Appellee Ciummo did not instruct the eyewitnesses that the actor may not be pictured in the array or that the eyewitnesses were to choose the actual actor, and Mr. Shaffer was the only person in the photo-array who had the shoulder-length, dark, curly hair that all of the witnesses described the bank robber as having. (Amended Complaint, paras. 24, 25; RR34).

Moreover, "… the question of probable cause in a Section 1983 damage suit is one for the jury. This is particularly true where the probable cause determination rests on credibility conflicts." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. Pa. 2000) (citations omitted) (quotations omitted). Accordingly, the question of the reliability of the witnesses is one for the jury as well.

Therefore, because the District Court did not take the facts as alleged by Mr. Shaffer as true and/or in the light most favorable to him, and because the question of probable cause is one for the jury, Mr. Shaffer respectfully suggests that the District Court erred in rendering its decision.

*ii.    Conspiracy*

The District Court also found that Mr. Shaffer failed to state a claim for conspiracy because he failed to state a constitutional violation, as probable cause existed for his arrest. (RR15). As stated hereinbefore above, the District Court's findings in regards to Mr. Shaffer's claims of malicious prosecution, false arrest

and false imprisonment were made in error. Therefore, if this Court finds Appellant's arguments above to be persuasive, it must then find that the District Court's reasoning for recommending that Mr. Shaffer's conspiracy claim should be dismissed is without merit.

Moreover, Judge Mitchell inexplicably found, "Even if Plaintiff alleged a constitutional violation, he has not adequately alleged that Defendants plotted or planned and conspired together to effectuate his arrest." (*Id.*). In his Amended Complaint, Mr. Shaffer clearly pled an illicit agreement between the Appellees to deprive him of his constitutional rights. (Amended Complaint, paras. 78-79; RR45-46). Therefore, those facts, taken as true and in the light most favorable to Mr. Shaffer, demonstrate that he has sufficiently pled a conspiracy claim.

### iii. *Intentional Infliction of Emotional Distress*

The District Court also found that because probable cause existed for Mr. Shaffer's arrest, the Appellees' conduct falls short of extreme and outrageous behavior sufficient for a claim of intentional infliction of emotional distress. (RR17). For the reasons mentioned in the section above, if this Court agrees with Mr. Shaffer regarding his claims of malicious prosecution, false arrest and false imprisonment, the District Court's reasoning for dismissing his intentional infliction of emotional distress claim is without merit.

The District Court also found that, "Even assuming the officers did not have probable cause to arrest Plaintiff, there are no allegations that the Defendants' conduct transcended all possible bounds of decency." (*Id.*). However, Mr. Shaffer alleged in his Amended Complaint that the Defendants constructed a suggestive photo array, as well as intentionally omitted exculpatory evidence from the affidavit of probable cause, in order to effectuate his unlawful arrest, prosecution and imprisonment. (See Amended Complaint paras. 24, 29; RR34-36). Mr. Shaffer respectfully suggests that police officers who intentionally steer an investigation to cause the unlawful arrest of a citizen, as alleged in his Amended Complaint, engage in conduct which transcends all bounds of decency. Moreover, these facts, taken as true and in the light most favorable to Mr. Shaffer, demonstrate a plausible claim for relief. Mr. Shaffer believes that the discovery process will further confirm and bolster his claim that the egregious abuse of power presented here is beyond all possible bounds of decency and utterly intolerable in civilized society.

Therefore, Mr. Shaffer respectfully suggests that his claim for intentional infliction of emotional distress be permitted to proceed through discovery and urges this Court to reverse the District Court's decision.

iv.    *Municipal Liability*

The District Court found that because the Appellee officers had probable cause to arrest Mr. Shaffer, his municipal liability claim against the City of Pittsburgh must also fail. (RR18). For the reasons set forth in Sections A and B(i), *supra*, Mr. Shaffer respectfully urges this Court to find that probable cause did not exist to arrest him, and, thus, he has stated a sufficient constitutional violation.

The District Court further found that, regardless of the probable cause issue, Mr. Shaffer's municipal liability claim is insufficient. (RR18-19). Judge Mitchell wrote, "Plaintiff cursorily alleges that the City failed to properly train, supervise and control its officers on the proper standards for investigation of crimes under these circumstances." (RR19). Judge Mitchell also found that Mr. Shaffer's claim must fail because he did not allege a specific deficiency in training, supervision or control and a causal link between that deficiency and a constitutional violation. (RR19).

At this stage, a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 213 (3d Cir. Pa. 2009). *Montgomery v. De Simone* held that,

> [A] failure to train, discipline or control can only form
> the basis for section 1983 municipal liability if the

21

> plaintiff can show both contemporaneous knowledge of
> the offending incident or knowledge of a prior pattern of
> similar incidents and circumstances under which the
> supervisor's actions or inaction could be found to have
> communicated a message of approval to the offending
> subordinate.

159 F.3d 120, 127 (3d Cir. 1998)

In his Amended Complaint, Mr. Shaffer pled specific facts which demonstrate a

clear failure on the part of senior supervisory leadership of the City of Pittsburgh to

properly train, supervise and control its police officers, particularly with respect to

using unreliable eyewitness identifications and failing to consider exculpatory

evidence when establishing probable cause. (*See,* Amended Complaint, paras. 42-

46, 83-93; RR 38-39, 47-48). Mr. Shaffer also set forth that the John and/or Jane

Doe Defendant(s) are part of the City of Pittsburgh's senior supervisory leadership

of the City's police department and acquiesced in and supported the unlawful

conduct of the Appellee officers. (*Id.*). Parenthetically, the District Court did not

mention Mr. Shaffer's allegations regarding the John and/or Jane Doe Defendants.

Therefore, in light of these facts, Mr. Shaffer has certainly set forth

sufficient allegations that raise a reasonable expectation that discovery will reveal

evidence of the necessary elements of a municipal liability claim. To make more

specific allegations, discovery is needed to reach the specific number and details of

claims against the Defendant City born out of the same failure to train, supervise

and control its officers on the proper standards for the investigation of crimes

under similar circumstances as those presented here, which Mr. Shaffer will present to the jury.

For those reasons, and in light of the precedent established in *Fowler* and *Montgomery*, Mr. Shaffer respectfully requests that this Honorable Court reverse the District Court's decision.

## CONCLUSION

In making its findings, it is respectfully urged that the District Court ignored applicable precedent and failed to view the facts as alleged by Mr. Shaffer in the light most favorable to him. Accordingly, Mr. Shaffer represents that the District Court rendered its decision to dismiss the entirety of his claims as a result of these fatal errors. Because the Amended Complaint contains sufficient factual allegations, which demonstrate that the Appellees lacked probable cause to arrest Mr. Shaffer and plausible claims of relief, Appellant respectfully requests that this Honorable Court reverse the District Court's decision to dismiss his the entirety of his claims.

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/Joel S. Sansone
PA ID No. 41008
Three Gateway Center, Suite 1700
401 Liberty Avenue
Pittsburgh, Pennsylvania 15222
412.281.9194

s/Massimo A. Terzigni
PA ID No. 317165
Three Gateway Center, Suite 1700
401 Liberty Avenue
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated:  January 14, 2016

<u>CERTIFICATE OF COUNSEL</u>

I hereby certify as follows:

1.      That I am a member of the bar of this Court.

2.      That the text of the electronic version of this brief is identical to the text of the paper copies.

3.      That the following virus protection detection program, Symantec, was run on the file and no virus was detected.

4.      That this brief contains 4823 words within the meaning of Fed.R.App.Proc. 32(a)(7)(B).  In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.


/s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
Attorney for the Plaintiff/Appellant
Suite 1700, Three Gateway Center
401 Liberty Avenue
Pittsburgh, Pennsylvania 15222
(412) 281-9194

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 15-3242

DALE SHAFFER,

Plaintiff, Appellant,

v.

CITY OF PITTSBURGH, et al.,

Defendants, Appellees.

JOINT APPENDIX, VOLUME I

On Appeal from a Memorandum Opinion and Order of Court
of the United States District Court for the
Western District of Pennsylvania, Civil Action No. 2-14-cv-01674
dated August 14, 2015, granting dismissal.

COUNSEL FOR APPELLANT

Joel S. Sansone, Esquire
LAW OFFICES OF JOEL SANSONE
Three Gateway Center, Suite 1700
401 Liberty Avenue
Pittsburgh, Pennsylvania 15222
412.281.9194

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DALE SHAFFER, | ) | |
| | ) | Civil Action No. 14-1674 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | HONORAL JOY FLOWERS CONTI |
| | ) | HONORABLE ROBERT C. MITCHELL |
| CITY OF PITTSBURGH, | ) | |
| a municipal corporation, | ) | |
| NICHOLAS J. BOBBS, in his | ) | |
| official and individual capacities, | ) | |
| ANTONIO CIUMMO, in his | ) | |
| official and individual capacities, | ) | |
| JOHN and/or JANE DOE, in their | ) | |
| individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | *Electronically filed.* |

PLAINTIFF'S NOTICE OF APPEAL

Please take notice that Plaintiff hereby appeals the Court's Memorandum Opinion dated

August 14, 2015, and Order dated August 14, 2015, granting dismissal of Plaintiff's Complaint.

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/Joel S. Sansone
Attorney for Plaintiff
PA ID No. 41008
Three Gateway Center, Suite 1700
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated:  August 14, 2015

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DALE SHAFFER,            )
       Plaintiff,       )    Civil Action No. 14-1674
                )
    v.               )    Magistrate Judge Robert C. Mitchell/
                )    Chief District Judge Joy Flowers Conti
CITY OF PITTSBURGH, NICHOLAS J.  )
BOBBS, ANTONIO CIUMMO, and JOHN )
and/or JANE DOE,       )
       Defendants.    )

### REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate Judge.

### I.    RECOMMENDATION

Plaintiff Dale Shaffer initiated this action against Defendants the City of Pittsburgh (the "City"), Nicholas J. Bobbs ("Bobbs"), Antonio Ciummo ("Cuimmo") and John and/or Jane Doe on December 11, 2014. With leave of Court, Plaintiff filed an amended complaint on April 14, 2015. Am. Compl. [ECF No. 19]. The named Defendants (City of Pittsburgh, Bobbs and Ciummo) filed a motion to dismiss Plaintiff's complaint on May 5, 2015. Mot. to Dismiss [ECF No. 20]. Plaintiff responded thereto on June 8, 2015 [ECF No. 23], and Defendants filed a reply on June 15, 2015 [ECF No. 24]. Therefore, the motion is fully briefed and ripe for disposition. For the following reasons, it is respectfully recommended that Defendants' motion to dismiss [ECF No. 20] be granted and Plaintiff's complaint be dismissed.

### II.    REPORT

    a.  Background

This case generally arises out of the alleged false arrest, imprisonment and prosecution of Plaintiff in connection with robberies committed in the Pittsburgh region. The facts alleged in the complaint and recounted here are taken as true for the purposes of this motion.

1

### i. PNC Bank Robbery

On March 13, 2013, at approximately 2:45 p.m., a PNC Bank located at 2603 East Carson Street, Pittsburgh, Pennsylvania was robbed by an adult, Caucasian male. The bank robber allegedly slid a note to a female bank teller demanding that she give the robber all of her money. She handed the robber approximately $800.00 in cash. Two male bank employees witnessed parts of the events but neither was aware that a robbery occurred until after it had taken place. At the time this robbery occurred, Plaintiff alleges he was helping a friend install insulation in a house approximately 2.7 miles away from where the robbery occurred. The female bank teller was the only person that had direct contact with the robber and described him as a 160 pound, 5'10'' Caucasian with medium build, shoulder-length, curly, black hair, wore big dark sunglasses, was clean shaven and had braces on his teeth. At the time of the robbery, Plaintiff was not clean shaven and did not have braces. One of the male employees described the robber as a 5'8'' to 6'2'' Caucasian male, 20 to 30 years old, with dark, curly, shoulder-length hair and dark aviator sunglasses and having a slight build. This employee testified that he only glanced up at the robber and that the robber's face was covered by big dark sunglasses and his long hair. The second male employee described the actor as having long, dark and curly hair, and wearing dark sunglasses. He also said that the actor was wearing a red and brown hooded sweatshirt, but the surveillance video showed that the actor was wearing a light gray sweatshirt. This employee also testified that he was in the back of the bank and on the phone when the robbery occurred and only saw the actor out of the corner of his eye.

On March 14, 2013, the City released a still photograph of the alleged bank robber captured from the bank's surveillance cameras to the local media. That same day, Plaintiff's estranged mother, who suffers from numerous mental disorders, contacted police and informed

2

them that her son, the Plaintiff, matched the description of the bank robber. After placing this call, Plaintiff's mother contacted Plaintiff to inform him that she called police and identified him as a possible suspect in the robbery. Plaintiff then contacted the police and informed them he was willing to go to the appropriate police station to clear his name. At that time, Plaintiff was informed that he did not need to go to the station.

Despite Plaintiff's phone call, Defendants Ciummo and Bobbs, both City police officers, placed a photograph of Plaintiff in four photo-arrays, which displayed the same eight photographs in different order. The female bank employee was unable to identify Plaintiff in the photo-arrays. The two male bank employees identified Plaintiff as the robber in the photo-arrays. Additionally, while Plaintiff alleges that Officer Ciummo did not instruct the eyewitnesses that the actor may not be pictured in the arrays, the police report attached to the motion to dismiss indicated that the officers told the witnesses that the actor may or may not be in the photo array.

On March 26, 2013, Officers Bobbs, Ciummo and/or Doe(s) presented Plaintiff's parole officer, Richard Donnelly, with still photographs from the security footage from the bank showing the actor and asked him if the person shown was Plaintiff. Plaintiff's parole officer identified the actor in the photographs as Plaintiff. Plaintiff argues that his parole officer was only presented with one person as the possible suspect to a crime that he had not witnessed and that the security footage presented to him was of such poor quality that no reliable identification could be made.

Officer Bobbs' affidavit of probable cause authored March 27, 2013 stated that the reasons he knew Plaintiff committed the crime were the identifications by the two male bank employees and the female bank employee's description. A warrant for Plaintiff's arrest in

connection with the PNC Bank robbery was issued on March 27, 2013. Plaintiff argues that Officer Bobbs intentionally or with reckless disregard for the truth omitted the following facts that any reasonable person would know include: (1) the female employee initially described the actor as having braces on his teeth and the Plaintiff has never had braces on his teeth; (2) the female employee, the only person who had direct contact and a clear view of the robber's face, was unable to identify the Plaintiff in the photo-array; (3) the two male employees, the witnesses who identified the Plaintiff in the photo-array, only viewed the actor for seconds at most and did not have direct contact with the actor; and (4) the actor wore large sunglasses during the commission of the crime which covered a large part of his face, and his face was also partially covered by his long hair making identification extremely difficult.

That same day, Plaintiff's parole officer contacted Plaintiff and requested that Plaintiff come to his office. Plaintiff complied and was placed under arrest by City police officers at his parole officer's office. Officer Bobbs charged Plaintiff with two counts of robbery related to the March 13, 2013 PNC Bank robbery. After Plaintiff's arrest, he alleges that Officer Bobbs refused to inform him of when and where the crime was committed and Plaintiff was unable to provide an immediate alibi. At all times, Plaintiff informed Defendants of his innocence. Plaintiff was then detained at Allegheny County Jail ("ACJ").

### ii. "Games N'At" Burglaries

On March 17, 2013, "Games N'At," a business located at 2010 Josephine Street, Pittsburgh, Pennsylvania was burglarized. The actor stole assorted video game equipment from the business establishment. Surveillance video at "Games N'At" showed that the actor of the burglary appeared to be the same person who robbed PNC Bank on March 13, 2013. Plaintiff's photograph was again placed into a photo-array and shown to an alleged eyewitness to the

burglary.[1]  Plaintiff argues that the photo-array was unusually suggestive because he is one of only two people with long hair, and the other long-haired person appears to be of Latino, and not Caucasian, descent.  Plaintiff's parole officer was shown still photographs from the surveillance video of the "Games N'At" burglary, and he again identified Plaintiff as the actor.  Thus, Plaintiff argues that Donnelly was presented with a one-person photo-array relating to a crime that he did not witness.  Plaintiff was arrested and charged with the burglary of "Games N'At" while incarcerated at ACJ.

On June 18, 2013, "Games N'At" was burglarized a second time and the video surveillance showed that it appeared to be the same person who burglarized the business on March 17, 2013 and robbed PNC Bank on March 13, 2013.  Because Plaintiff was detained at ACJ at the time of the second burglary and could not have committed that crime, Plaintiff's charges stemming from the March 17, 2013 burglary of "Games N'At" were *nolle prossed*.[2]

### iii. Trial for the PNC Bank Robbery

Plaintiff was tried for the March 13, 2013 PNC Bank robbery from February 3, 2014 through February 4, 2014 and the jury returned a not guilty verdict.  Pending his trial, Plaintiff was detained at ACJ from March 27, 2013 until February 4, 2014, or 314 days.

### iv. Civil Rights Complaint

Plaintiff filed the instant action against the City and the Officers and Supervisors involved alleging that there was a failure to properly train, supervise and control the officers on

---

[1]    This alleged eyewitness later became a co-defendant in the case after stolen items from the burglary were found in his possession.

[2]    It is unclear from the complaint whether the first burglary of "Games N'At" was also *nolle prossed*, but because the Plaintiff focuses his alleged constitutional violations on the charges and prosecution of the PNC Bank robbery, the Court will limit its discussion to the PNC Bank robbery.

the proper standards for the investigation of crimes under these circumstances. Plaintiff also alleges that this failure to train was pervasive and has led to numerous unlawful arrests, malicious prosecutions and/or constitutional right deprivations by the City of Pittsburgh. Plaintiff also alleges that the supervisory leadership of the Pittsburgh Police Department participated in the unlawful actions and acquiesced and supported the conduct of the Defendant officers. Plaintiff brings the following claims against all of the Defendants: malicious prosecution, false arrest and false imprisonment; brings claims for conspiracy and intentional infliction of emotional distress against the individual defendants; and brings a municipal liability claim against the City.

### v. *Motion to Dismiss*

Defendants filed a joint motion to dismiss the claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that Plaintiff's complaint fails to establish that probable cause did not exist at the time of his arrest, and therefore his claims for malicious prosecution, false arrest and false imprisonment must be dismissed. Next, Defendants argue that Plaintiff's conspiracy claim must be dismissed because Plaintiff failed to allege an express illicit agreement to violate Plaintiff's constitutional rights. Additionally, Defendants argue that Plaintiff's claim for intentional infliction of emotional distress fails because Plaintiff has failed to allege sufficiently outrageous behavior. Lastly, Defendants argue that Plaintiff's municipal liability claim against the City must be dismissed for failure to allege a municipal policy or custom that violated his constitutional rights.

### b. Standard of Review

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

6

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561 (citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555). The factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations omitted). A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Although a district court may not generally consider matters extraneous to

7

pleadings when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), it may consider documents integral to or explicitly relied upon in a complaint without

converting the motion to dismiss into a motion for summary judgment. *West Penn Allegheny*

*Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *In re Burlington Coat Factory Sec.*

*Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added). Accordingly, the Court may take

into consideration the police reports and the affidavit of probable cause attached to the motion to

dismiss without converting Defendants' motion into one for summary judgment in making this

recommendation, as the authenticity of those documents are undisputed and based on Plaintiff's

claims.

    c.  Discussion

    Plaintiff brings his various claims under 42 U.S.C. § 1983 ("Section 1983") which

provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress[.]

42 U.S.C. § 1983. While Section 1983 "provides remedies for deprivations of rights established

in the Constitution or federal laws[,] [i]t does not, by its own terms, create substantive rights."

*Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Baker v. McCollan*, 443 U.S.

137, 145 n. 3 (1979)). Thus, a plaintiff seeking redress under Section 1983 must allege sufficient

facts showing that "the defendant, acting under color of state law, deprived him or her of a right

secured by the Constitution or the laws of the United States." *Id.* at 423.

Because Defendants move to dismiss each claim against them, the Court will discuss each claim and Defendants' argument separately.

> i.    *False Arrest, False Imprisonment and Malicious Prosecution*

Plaintiff brings claims for false arrest, false imprisonment and malicious prosecution, all of which require a showing that Defendants lacked probable cause to arrest, imprison or prosecute Plaintiff.[3] Defendants argue that probable cause existed at the time of Plaintiff's arrest and therefore these claims should be dismissed.

The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, provides the right that citizens be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. The Fourth Amendment prohibits the arrest, imprisonment or prosecution of a citizen "except upon probable cause." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citing *Papachistou v. City of Jacksonville*, 405 U.S. 156, 169 (1972)). While the question of probable cause in a Section 1983 suit is a jury determination, the court may conclude that probable cause existed as a matter of law if any reasonable reading of the complaint would not support a contrary finding. *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (citations omitted).

Probable cause requires more than "mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt" before effectuating an arrest. *Id.* at 483 (citations omitted). Probable cause to arrest a citizen "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a

---

[3]    *See Johnson v. Bingnear*, 441 F. App'x 848, 851 (3d Cir. 2011) (probable cause is an element to prove in false arrest and malicious prosecution claims); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (probable cause is element of false imprisonment).

reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010) (quoting *Orsatti*, 71 F.3d at 483).

When an arrest is made pursuant to a warrant, probable cause generally exists when the arrest warrant meets the requirements of the Fourth Amendment. *Kis v. Cnty. of Schuylkill*, 866 F. Supp. 1462, 1469 (E.D. Pa. 1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). Where, as here, the Plaintiff challenges the sufficiency of an affidavit for probable cause incident to an arrest warrant based upon the officer-affiant's failure to investigate and include in the affidavit of probable cause potentially exculpatory evidence such as an alibi, courts should consider the distinction between "fundamental" evidence – that which an officer must consider – and "interpretative" evidence – that which "could be subject to a variety of interpretations." *Kelly v. Jones*, No. 14-CV-4317, 2015 WL 1759213, at *5 (E.D.Pa. Apr. 17, 2015) (citing *Romero v. Fay*, 45 F.3d 1472, 1477 (10th Cir. 1995)). Fundamental evidence is objective evidence from an official source which would completely exonerate the suspect. *Id.*

Here, while Plaintiff was found not guilty of the PNC Bank robbery, the officers had probable cause to effectuate his arrest in the first instance. An officer is required to consider and include in an affidavit of probable cause for an arrest warrant any fundamental exculpatory evidence. Plaintiff claims the affiant-officer should have included in the application for probable cause that the female bank employee described the actor as having braces on his teeth, that Plaintiff never had braces on his teeth, that the female employee was unable to identify Plaintiff as the actor in the photo array, and that the two male employees who identified Plaintiff as the actor in the photo array did not have direct contact with the actor and the actor wore large sunglasses and covered his face with his long hair. These facts from witness identification are all open for interpretation and do not provide a fundamental alibi, such as incarceration, at the time

10

the robbery took place.  The facts known to the officers at the time the arrest warrant was applied

for was that PNC Bank had been robbed on March 13, 2013, and the suspect was a Caucasian

male between 20 and 30 years old with a medium build and long dark curly hair.  Additionally,

Plaintiff's mother identified Plaintiff from a surveillance photo released to the press as the actor

who committed the PNC Bank robbery.  Further, two eyewitnesses identified Plaintiff from the

photo array as the actor who committed the robbery, and Plaintiff's parole officer corroborated

his identification in the photo array and the surveillance photographs.   While the fact that

Plaintiff contacted the police and tried to exonerate himself after his mother informed him that

she identified him to police as the suspect and he provided an alibi for his whereabouts at the

time of the robbery tend to provide a defense to the robbery – this does not negate the fact that

two bank employees identified him in the photo array and his parole officer and mother

corroborated his identity.  Additionally, Plaintiff's own alibi placed him at a friend's house less

than three miles away from the scene of the crime at the time the robbery was committed.  While

the entirety of the police investigation is far from laudable in light of all of the circumstances, the

constitution only protects citizens from arrest without probable cause.  The officers here were

reasonable in believing that Plaintiff robbed PNC Bank from the eyewitness identifications, the

identification of Plaintiff in surveillance photos by his mother and the corroboration of his

identity by his parole officer, such that they had the probable cause necessary for his arrest.

      While this Court is not restricted by the state court's finding of probable cause in issuing

an arrest warrant, this Court finds that the facts and circumstances were sufficient to warrant a

reasonable person to believe that Plaintiff committed the offense.  The facts which Plaintiff

alleges would have exonerated him or tend to disprove probable cause are not objective evidence

from an official source tending to completely exonerate him but rather are subject to a variety of

interpretations. If for example, Plaintiff was arrested for the second burglary of "Games N'At" which occurred when he was incarcerated, Plaintiff would have a strong argument that Defendants' failure to include this fundamental evidence in the affidavit of probable cause negated any probable cause that Defendants claimed to have to arrest Plaintiff. That, however, is not the case, as Plaintiff was not arrested or charged with the second "Games N'At" burglary. While the actor of the PNC Bank robbery and "Games N'At" burglaries appeared to be the same, and the second "Games N'At" burglary occurred while Plaintiff was incarcerated provides a defense to these crimes for Plaintiff, it does not negate probable cause in the first instance. Plaintiff contests the reliability of the eyewitnesses' identification, which tends to be a defense to the crimes he was charged with and does not by itself disprove probable cause. *See Walker v. Spiller*, 54 F.Supp.2d 421, 426 (E.D.Pa. 1999) (quoting Romero, 45F.3d at 1477-78) ("A police officer's failure to investigate a suspect's alibi does not 'negate the probable cause for the warrantless arrest in the absence of showing that the [officer's] initial probable cause determination was itself unreasonable."); *Swope v. City of Pittsburgh*, ---, F.Supp.3d ---, ---, No. 2:14-CV-939, 2015 WL 500922, at *5 (W.D. Pa. Feb. 5, 2015) (rejected arguments against a finding of probable cause that were "more in the nature of a defense to those crimes rather than a basis for finding that [officer's] lacked probable cause in the first place.").

Unfortunately, while Plaintiff was ultimately found not guilty of the robbery, the Defendants had probable cause in the first instance to arrest Plaintiff. The Defendants "had no duty to continue to investigate before seeking an arrest warrant once they had probable cause to believe" Plaintiff committed the robbery. *Swope*, 2015 WL 500922, at *5. *See also Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (in making a probable cause determination, a court should concentrate on information available to officers at the time of the

arrest and "not on whether the information resulted from exemplary police work."). It is clear

from Plaintiff's complaint that as a matter of law, the Defendants had probable cause to seek a

warrant for Plaintiff's arrest and consequently, it is respectfully recommended that Plaintiff's

claims for false arrest, false imprisonment and malicious prosecution be dismissed. *See accord*

*Swope*, 2015 WL 500922, at *5.

       *ii.*    *Conspiracy*

Plaintiff brings a conspiracy claim against the individual officers claiming that these

Defendants intended to unlawfully arrest and imprison Plaintiff and maliciously prosecute him

by concealing and distorting the facts of the circumstances of the case and acted in concert with

one another in doing so. The Defendants argue that this claim must be dismissed, because

Plaintiff fails to adequately allege an express illicit agreement to violate Plaintiff's rights.

To "prevail on a conspiracy claim under [Section] 1983, a plaintiff must prove that

persons acting under color of law conspired to deprive him of a federally protected right[.]"

*Watson v. Sec'y of Pa. Dept. of Corr.*, 436 Fed.App'x 131, 137 (3d Cir. 2011) (quoting

*Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) *superseded by*

*statute on other grounds as stated in P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d

Cir. 2009). Because "the linchpin of a conspiracy claim is agreement, a plaintiff must allege

with particularity and present material facts which show that the purported conspirators reached

some understanding or agreement or plotted, planned and conspired together to deprive plaintiff

of a federally protected right." *Laurensau v. Folino*, 2012 WL 4508140, at *7-*9 (W.D.Pa. Sept.

28, 2012) (quoting *Watson*, 2011 WL 2678920, at *6; *Adee v. Beard*, 2012 WL 383622, at *7

(M.D.Pa. Feb. 6, 2012) (quotation marks omitted)).

To sufficiently set forth a conspiracy claim, a plaintiff must set forth facts alleging "(1) the conduct that violated the plaintiff's rights; (2) the time and place of the conduct, and (3) the identity of the officials responsible for the conduct." *Adee*, 2012 WL 383622, at *7 (citing *Oatess v. Sobolevitch*, 914 F.2d 428, 432 n. 8 (3d Cir. 1990)). Additionally, "[s]ufficiently particularized pleadings will include (1) the period of the conspiracy, (2) the object of the conspiracy, and (3) certain actions of the alleged conspirators taken to achieve that purpose." *Houghton v. Dauphin Cnty. Emergency Mgmt. Agency*, 2007 WL 1200133, at *3 (M.D.Pa. April 20, 2007) (internal quotation marks and citations omitted).

Because Plaintiff failed to state a constitutional violation, as probable cause existed for his arrest, Plaintiff has failed to state a claim for conspiracy, as Defendants' conduct did not violate any constitutional right. Even if Plaintiff alleged a constitutional violation, he has not adequately alleged that Defendants plotted or planned and conspired together to effectuate his arrest. The facts as alleged show that Plaintiff was arrested based on eyewitness identification and not based on the officer's surreptitious plot or plan to arrest the Plaintiff for the PNC Bank robbery. It is therefore respectfully recommended that Plaintiff's conspiracy claim be dismissed.

### iii.    *Intentional Infliction of Emotional Distress*

Plaintiff brings a claim for the tort of intentional infliction of emotional distress against the individual officer Defendants claiming that the illegal arrest, imprisonment and prosecution intended to inflict him with emotional distress. Defendants move to dismiss this claim, arguing that Plaintiff's claims fall short of the "outrageous" conduct necessary to state a claim for intentional infliction of emotional distress.

To bring a claim for intentional infliction of emotional distress, a plaintiff must demonstrate: (1) extreme and outrageous conduct on behalf of the defendant; (2) that the

defendant's conduct was intentional or reckless; (3) that defendant's conduct caused emotional distress to plaintiff; and (4) that the emotional distress was severe.[4]    Additionally, the plaintiff must alleged that he suffered some physical manifestation of "harm due to the defendant's outrageous conduct." *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122-23 (Pa.Super.Ct. 2004).    A defendant's conduct needs to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 754 (Pa.1998). With regard to a defendant's outrageous conduct,

> liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Kazatsky v. King David Mem'l Park, Inc.*, 515 Pa. 183, 527 A.2d 988, 991–92 (Pa.1987) (quoting Restatement (Second) of Torts § 46 cmt. D. (1965)).    As for the outrageousness element, "it is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Swisher v. Pitz*, 868 A.2d 1228, 1231 (Pa.Super.Ct.2005) (citations omitted).    "Police officers doing their job by arresting people when

---

[4]    While the Pennsylvania Supreme Court has not expressly adopted the tort of intentional infliction of emotion distress, it has identified such a cause of action, and in doing so, has utilized the provisions of the Restatement (Second) of Torts § 46. *See Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000); *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 201 (Pa. Super. Ct. 2008) (while "[t]his tort . . . has never been explicitly recognized as a cause of action by our Pennsylvania Supreme Court, . . . the Supreme Court has cited a section as setting forth the minimum elements necessary to sustain such a cause of action."). Likewise, the Court of Appeals for the Third Circuit has "consistently predicted . . . that the Pennsylvania Supreme Court will ultimately recognize this tort[,] . . . and [will] generally follow the basic formulation of the tort found in [section] 46 of the Restatement (Second) of Torts." *Pavlik v. Lane Ltd./Tobacco Exporters Intern.*, 135 F.3d 876, 890 (3d Cir. 1998).

they have probable cause to do so certainly falls far short of extreme or outrageous conduct." *McIntosh v. Crist*, No. 3:13-CV-103, 2015 WL 418982, at *14 (W.D. Pa. Feb. 2, 2015) (quoting *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa.Cmwlth. 2010)).

Courts that have found that a claim existed for intentional infliction of emotional distress in connection with an arrest have done so where the plaintiff was physically injured by the officers, or where the officer's conduct was otherwise exceptionally reprehensible. *See McIntosh*, 2015 WL 418982, at *14 (officers used a Taser gun on plaintiffs multiple times after they were handcuffed and not resisting arrest); *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 646 (E.D. Pa. 2014) (excessive force claim where officers repeatedly struck Plaintiff on his face and upper body, used a Taser gun excessively and pistol-whipped him in the face with a Taser gun); *Valdetarro v. Vollrath*, No. CIV.A. 02-CV-2870, 2002 WL 32107615, at *4 (E.D. Pa. Dec. 24, 2002) (falsifying charges to obtain an arrest warrant); *Moser v. Bascelli*, 865 F. Supp. 249, 253 (E.D. Pa. 1994) (officer chased down and cornered a traffic violator and without cause or justification, fired three shots at plaintiff, striking him twice).

In the instant case, because Defendants had probable cause to arrest Plaintiff, their conduct falls far short of extreme and outrageous behavior. Even assuming the officers did not have probable cause to arrest Plaintiff, there are no allegations that the Defendants' conduct transcended all possible bounds of decency and should be regarded as utterly intolerable. There was no excessive force used in arresting Plaintiff, nor did Defendants falsify the charges against Plaintiff. While Defendants' police work in investigating the PNC robbery was less than exemplary, careless police work does not give rise to a cause of action for intentional infliction of emotional distress. Accordingly, it is respectfully recommended that Plaintiff's claim for intentional infliction of emotional distress be dismissed.

### iv. Municipal Liability

When suit is brought against a municipality for a constitutional violation under Section 1983, "the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. Dep't of Soc. Servs. New York City*, 436 U.S. 658 (1978)). The City of Pittsburgh, as a municipal entity, "can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York, PA*, 564 F.3d 636, 657 (3d Cir. 2009) (citations omitted). Where, as here, plaintiff alleges that a municipal custom violates his constitutional rights, such a "course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law." *Id.* at 658 (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (additional citations omitted)). A municipal "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker." *Id.* While a municipality can be liable under Section 1983 even if no individual officer violated the constitution, "for there to be municipal liability, there still must be a violation of plaintiff's constitutional rights." *Brown v. Commonwealth of Pennsylvania, Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003).

Here, because the Defendant Officers had probable cause to arrest Plaintiff, Plaintiff's claim against the City must fail. Assuming *arguendo* that Defendant Officers did not have probable cause to arrest Plaintiff and his constitutional claims remained, he has failed to adequately allege that the City's failure to train its officers to investigate crimes is so customary

17

so as to virtually constitute law. Plaintiff cursorily alleges that the City failed to properly train, supervise and control its officers on the proper standards for investigation of crimes under these circumstances. However, Plaintiff does not allege any specific deficiency in the City's training, supervision or control of its officers besides pointing to his own circumstances and has not alleged a direct causal link between the City's failure to train its officers to investigate crimes and making arrests without probable cause. Accordingly, it is respectfully recommended that Plaintiff's municipal liability claim against the City be dismissed.

## III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants the City of Pittsburgh, Nicholas J. Bobbs and Antonio Ciummo's motion to dismiss [ECF No. 20] be granted and Plaintiff's complaint be dismissed.

In accordance with Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are permitted until <u>July 22, 2015</u> to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: July 7, 2015

Respectfully submitted,

<u>/s Robert C. Mitchell</u>
ROBERT C. MITCHELL
United States Magistrate Judge

cc:    The Honorable Joy Flowers Conti
United States District Court
Western District of Pennsylvania

*Counsel for Plaintiff*
Joel S. Sansone, Esquire
Massimo A. Terzigni, Esquire
Law Offices of Joel Sansone
Three Gateway Center, Suite 1700
401 Liberty Avenue
Pittsburgh, PA 15222

*Counsel for Defendant City of Pittsburgh*
Lourdes Sanchez Ridge, Esquire
Michael E. Kennedy, Esquire
City of Pittsburgh Department of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219

*Counsel for Defendant Nicholas J. Bobbs and Antonio Ciummo*
Bryan Campbell, Esquire
Allison N. Genard, Esquire
330 Grant Street
Suite 2330
Pittsburgh, PA 15219

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DALE SHAFFER,                                )
          Plaintiff,                    )    Civil Action No. 14-1674
                           )
        v.                              )    Magistrate Judge Robert C. Mitchell/
                           )    Chief District Judge Joy Flowers Conti
CITY OF PITTSBURGH, NICHOLAS J.   )
BOBBS, ANTONIO CIUMMO, and JOHN   )
and/or JANE DOE,                  )
          Defendants.                   )

## MEMORANDUM OPINION

**CONTI**, Chief District Judge.

Plaintiff Dale Shaffer ("Plaintiff") commenced the present action on December 11, 2014. The case was referred to a United States Magistrate Judge for pretrial proceedings in accordance with Magistrate Judges Act, 28 U.S.C. § 636(b)(1) and Local Rules of Court 72.C and 72.D.

Defendants City of Pittsburgh, Nicholas J. Bobbs, and Antonio Ciummo (collectively "Defendants") filed a motion to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Mot. to Dismiss [ECF No. 20]. The magistrate judge's Report and Recommendation [ECF No. 25] submitted July 7, 2015 recommended that Defendants' motion to dismiss be granted and Plaintiff's claims be dismissed. Service of the Report and Recommendation was made on all parties. The parties were informed that in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2, they had until July 22, 2015 to file any objections. Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation on July 22, 2015 [ECF No. 26], to which Defendants responded on August 4, 2015 [ECF No. 27].

Plaintiff objects to the Report and Recommendation on five separate grounds: (1) the magistrate judge found that probable cause existed for Plaintiff's arrest because the evidence

Even if the female witness' inability to identify Plaintiff from the photo-array and the other information that was omitted had been included in the affidavit of probable cause, a reasonable judge still would have found probable cause existed. The magistrate judge was correct in recommending that there was substantial independent evidence in viewing the totality of the circumstances, including two corroborative identifications and two eyewitness identifications, for a finding of probable cause. Probable cause turns on whether a reasonable person in the officer's position could have concluded based on the knowledge at the time the affidavit was sworn that Plaintiff could have committed a crime. *See Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010) (quoting *Orsatti*, 71 F.3d at 483); Rep. and Rec. [ECF No. 25] at 9-10. Here, Plaintiff's mother, whose mental state was not alleged to be known by the affiant, identified him as the PNC Bank burglary suspect, two eyewitnesses identified him as the suspect and his parole officer corroborated his identity by viewing a surveillance photo. All these facts would lead a reasonable person to believe that Plaintiff committed the PNC Bank burglary. Because a court must focus on the information available to officers at the time of the arrest in determining whether probable cause existed, and "'not on whether the information resulted from exemplary police work[,]'" it is clear that probable cause existed in the affidavit of probable cause for Plaintiff's arrest warrant. Rep. and Rec. [ECF No. 25] at 13 (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995)). Accordingly, Plaintiff's objections are without merit and overruled.

Because the court adopts the magistrate judge's conclusion that there were insufficient factual allegations to plausibly infer that probable cause was lacking for Plaintiff's arrest, Plaintiff's remaining objections regarding the dismissal of his claims for conspiracy, intentional infliction of emotional distress and municipal liability are likewise without merit and overruled.

This court concludes that based upon factual allegations in the complaint probable cause existed for Plaintiff's arrest. By reason of the specificity of the factual allegations in the complaint

3

the court cannot discern that there could be other factual allegations plaintiff could assert to permit a reasonable inference that probable cause did not exist. Under those circumstances amendment would be futile and Plaintiff's complaint is necessarily dismissed with prejudice. *See Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988).

An appropriate order will be entered.

Dated: <u>August 14, 2015</u>

/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

cc:    The Honorable Robert C. Mitchell
United States District Court
Western District of Pennsylvania

*Counsel for Plaintiff*
Joel S. Sansone, Esquire
Massimo A. Terzigni, Esquire
Law Offices of Joel Sansone
Three Gateway Center, Suite 1700
401 Liberty Avenue
Pittsburgh, PA 15222

*Counsel for Defendant City of Pittsburgh*
Lourdes Sanchez Ridge, Esquire
Michael E. Kennedy, Esquire
City of Pittsburgh Department of Law
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219

*Counsel for Defendant Nicholas J. Bobbs and Antonio Ciummo*
Bryan Campbell, Esquire
Allison N. Genard, Esquire
330 Grant Street
Suite 2330
Pittsburgh, PA 15219

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DALE SHAFFER,               )
          Plaintiff,       )       Civil Action No. 14-1674
                        )
       v.                   )       Magistrate Judge Robert C. Mitchell/
                        )       Chief District Judge Joy Flowers Conti
CITY OF PITTSBURGH, NICHOLAS J. )
BOBBS, ANTONIO CIUMMO, and JOHN )
and/or JANE DOE,            )
          Defendants.     )

## <u>ORDER</u>

**CONTI**, Chief District Judge.

AND NOW, this 14th day of August, 2015, after a de novo review of the submissions in this case, together with the Report and Recommendation, the following Order is entered:

IT IS HEREBY ORDERED that the motion to dismiss [ECF No. 20] filed by Defendants City of Pittsburgh, Nicholas J. Bobbs and Antonio Ciummo granted and the complaint filed by Plaintiff Dale Shaffer is dismissed with prejudice;

IT IS FURTHER ORDERED that the Report and Recommendation [ECF No. 25] of Magistrate Judge Robert C. Mitchell, as supplemented by this memorandum opinion, is hereby adopted as the opinion of this court. The Clerk is to mark this CASE CLOSED.

By the Court,

/s/ Joy Flowers Conti
The Honorable Joy Flowers Conti
United States Chief District Judge

RR 24A

cc:     The Honorable Robert C. Mitchell
        United States District Court
        Western District of Pennsylvania

        *Counsel for Plaintiff*
        Joel S. Sansone, Esquire
        Massimo A. Terzigni, Esquire
        Law Offices of Joel Sansone
        Three Gateway Center, Suite 1700
        401 Liberty Avenue
        Pittsburgh, PA 15222

        *Counsel for Defendant City of Pittsburgh*
        Lourdes Sanchez Ridge, Esquire
        Michael E. Kennedy, Esquire
        City of Pittsburgh Department of Law
        313 City-County Building
        414 Grant Street
        Pittsburgh, PA 15219

        *Counsel for Defendant Nicholas J. Bobbs and Antonio Ciummo*
        Bryan Campbell, Esquire
        Allison N. Genard, Esquire
        330 Grant Street
        Suite 2330
        Pittsburgh, PA 15219

RR24B

## CERTIFICATE OF SERVICE

This hereby certifies that on the 14th day of January, 2016, a true and correct copy of the foregoing documents, Brief for Appellant and Appendix, Volume I, were served upon the following by ECF transmission which service satisfies the requirements of F.R.A.P. 25.

Lourdes Sanchez Ridge, Esquire
City Solicitor
Michael Kennedy, Esquire
Assistant City Solicitor
313 City-County Building
414 Grant Street
Pittsburgh, Pennsylvania 15219

Bryan Campbell, Esquire
330 Grant Street, Suite 2620
Pittsburgh, Pennsylvania 15219

In addition, seven copies were also sent by first-class mail to the office of the Clerk of the United States Court of Appeals for the Third Circuit in Philadelphia, Pennsylvania.

/s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
Attorney for the Plaintiff/Appellant
Suite 1700, Three Gateway Center
401 Liberty Avenue
Pittsburgh, Pennsylvania 15222
(412) 281-9194